UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY DILLINGHAM,

           Plaintiff,

     v.

EVA SCRUGGS, et al.,

           Defendants.

Case No.  12-cv-06537-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Jerry Dillingham, currently incarcerated at the California Substance Abuse and Treatment Facility, brings the instant *pro se* action, pursuant to 42 U.S.C. § 1983, stemming from alleged constitutional violations that took place while he was incarcerated at Salinas Valley State Prison ("SVSP") from 2011 through 2012, including a retaliation claim against his bakery supervisors for drafting disciplinary memos ("128-A" or "chronos") and rules violation reports ("RVRs") documenting his bad behavior in retaliation for Plaintiff filing inmate grievances against them.  The operative pleading is Plaintiff's Second Amended Complaint ("SAC"), which the Court has reviewed and has found to have raised cognizable claims against the following Defendants: Bakery Supervisors Eva Scruggs and J. Brunscher; Officer S. Lawson; Lieutenants P. Sulliven, R. Mojica, and E. Medina; Captain R. Binkele; former Chief Deputy Warden A. Hedgpeth; and M. "Cats" or "Cate"[1] ("Defendant Cats/Cate").

Before the Court is Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment.  Dkt. 65.  They argue that (1) the SAC should be dismissed for failure to state a claim; (2) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to some of his claims; and (3) Plaintiff cannot

---

[1] There is some dispute in the record as to whether this named Defendant is "M. Cats" or "M. Cate"; therefore, the Court will refer to this Defendant using both names.  In addition, to date, Defendant Cats/Cate has not yet been served; however, as explained below, the Court will resolve all claims against this unserved Defendant after it has resolved all claims against the served Defendants.

1   satisfy the elements of his remaining retaliation claim against Defendants Brunscher, Scruggs, and

2   Lawson.  Id. at 1.  Plaintiff has filed an opposition to the motion,[2] and Defendants have filed their

3   reply.  Dkts. 89, 96.

4          For the reasons outlined below, the Court GRANTS Defendants' motion for summary

5   judgment based on Plaintiff's failure to exhaust administrative remedies as to some of his claims,

6   GRANTS the motion for summary judgment as to his failure to satisfy the elements of the

7   remaining retaliation claim, and DENIES as moot their alternative motion for judgment on the

8   pleadings.  Because the Court has resolved similar claims in favor of the served Defendants, it also

9   GRANTS summary judgment as to the claims against unserved Defendant Cats/Cate based on

10  Plaintiff's failure to exhaust administrative remedies.

**II.     DISCUSSION**

       **A.     Background**

              **1.  Summary of Claims**

14         The following summary of Plaintiff's claims is taken from the Court's August 28, 2014

15  Order of Partial Dismissal and Service, which states as follows:

>          In his SAC, Plaintiff alleges multiple incidents involving
> various SVSP prison officials.  Specifically, the Court finds that
> Plaintiff has alleged the following cognizable claims against the
> following named Defendants:
>
>          (1)     a claim of retaliation against Defendants Scruggs,
> Brunscher, Lawson, Sulliven, Binkele, and Hedgpeth for acting in
> retaliation for Plaintiff filing grievances and leading to Plaintiff's
> termination from his employment based on his refusal to sign a
> "discresionary [sic] binfit [sic] agreement[]" and "conditioning [his]
> employment on such a waiver";
>
>          (2)     an Eighth Amendment claim that Defendants Scruggs
> and Brunscher acted with deliberate indifference to the threat of
> serious harm or injury to Plaintiff by other prisoners resulting from
> these Defendants spreading certain rumors that Plaintiff was an
> "F.B.I., snitch, rat, informer";
>
>          (3)     a claim for emotional distress and mental torture

---

[2] In opposition to the pending dispositive, Plaintiff's filed a document entitled, "Brief in Support of Pl.['s] Motion for Partial Summary Judgment[,] Motion [for] Judgment on [the] Pleading[s] Exhaust Administrative Remedies & Summ. J. In Pl.['s] Favor," which the Court construes to be Plaintiff's verified opposition.  Dkt. 89.

United States District Court
Northern District of California

against Defendants Scruggs, Brunscher, Mojica and Medina for their "acts/ommissions [sic] of [] malicious callous intent" prior to the incident involving an assault and battery with a weapon by his cell mate inmate Lozano, who stated to Plaintiff, "That ass kicking is for being a SNITCH!";

(4)    a claim of retaliation against Defendants Brunscher, Scruggs, Lawson, Medina and Mojica for retaliation against Plaintiff for filing grievances;

(5)    a claim of a denial of Plaintiff's right to access to the courts against Defendants Mojica and Medina; and

(6)    a claim of conspiracy and a related claim of failing to prevent the conspiracy, in violation of 42 U.S.C. § 1986, against Defendants Mojica, Medina, Hedgpeth and Cats[/Cate].

Dkt. 16 [SAC] at 15-16.[3]

Dkt. 23 at 3-4.

## 2. Background Relating to Exhaustion

Defendants have presented Plaintiff's prison records, which they argue prove that he never submitted grievances through the CDCR's administrative grievance process concerning a majority of the aforementioned cognizable claims, i.e., all claims except for the retaliation claim against Defendants Brunscher, Scruggs, and Lawson. Dkt. 65 at 29. They state as follows:

A very liberal construction of [Plaintiff]'s grievances might construe them to complain about retaliation by Defendants Brunscher, Scruggs, and Lawson. But no fair reading of [Plaintiff]'s grievances could conclude that he complained that any Defendants put him in harm's way by labeling him a snitch, caused him to be threatened or attacked by other inmates, conspired to violate his constitutional rights, violated his right to court access, or mentally tortured him in violation of the Eighth Amendment. (Medina Decl., Exs. B, D, E.) Thus, [Plaintiff] failed to exhaust administrative remedies for his deliberate-indifference claim, court access claim, conspiracy claim, and Eighth Amendment claim for mental torture. *Griffin*[ *v. Arpaio*], 557 F.3d [1117,] 1120 [(9th Cir. 2009)]. Accordingly, the Court should grant summary judgment in Defendants' favor on each of those claims.

*Id.* Before turning to the facts relating to exhaustion in the present case, the Court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

---

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### a.  Legal Framework Relating to Exhaustion

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions.  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Thus, the PLRA requires compliance with prison grievance procedures to exhaust properly.  *Id.*  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Id.* at 84.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).[4]

To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 ("appeal" or "grievance") describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing.  *Id.* § 3084.2(a)-(c).  The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The level of specificity required in the appeal is described in the California Code of Regulations as follows:

---

[4] The regulations pertaining to the inmate appeal process were amended effective January 28, 2011.  As explained below, Plaintiff's grievances were submitted *after* January 28, 2011; therefore, the amended regulations were in effect and govern his grievances.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.   To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).  Inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed."  *Id.* § 3084.8(b)(1).

The CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee ("Director's Level").  *Id.* §§ 3084.7.[5]  A prisoner exhausts the appeal process when he completes the third level of review.  *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).  A "cancellation or rejection" of an appeal "does not exhaust administrative remedies."  Cal. Code Regs. tit. 15, § 3084.1(b).

### b.  Plaintiff's Relevant Appeal History

From 2000 to the present, Plaintiff has administratively exhausted "more than 30 inmate grievances" to the Director's Level.  Briggs Decl. ¶ 7, Ex. A.  Among those grievances exhausted through the Director's level, two were submitted during the relevant period of 2011 through 2012—SVSP-12-02488 and SVSP-11-01435.  Briggs Decl. ¶ 8, Ex. A; Medina Decl. ¶ 15, Exs. B, C.  The record shows that SVSP-12-02488 concerned Plaintiff's complaint about the outcome of the hearing on an unrelated May 26, 2012 RVR.  Medina Decl., Ex. C.  However, the other exhausted grievance, SVSP-11- 01435, concerned some of the claims in the present action, as further explained below.  Medina Decl. ¶¶ 17, 21, Ex. B.

In addition, Plaintiff submitted, albeit only to the lower levels of review, two other grievances concerning the issues in the present action and related to his job in the bakery in 2011 and 2012—SVSP-L-11-379 and SVSP-L-11-669.  Medina Decl. ¶¶ 17-20, Exs. D, E.

---

[5] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal.  *See* Cal. Code Regs. tit. 15, § 3084.7.

United States District Court
Northern District of California

Defendants have supplied copies of the relevant grievances, to which the Court will cite. Plaintiff does not dispute that these grievances are relevant to the present case. Therefore, the Court will limit its analysis to the three relevant grievances, which are summarized below:

### 1) SVSP-L-11-379[6]

On February 9, 2011, Plaintiff submitted SVSP-L-11-379 to the first level of review. Medina Decl. ¶ 18, Ex. D. In SVSP-L-11-379, Plaintiff complained about a chrono that Defendant Scruggs prepared on February 4, 2011, and in which she was critical of Plaintiff's job performance on January 27, 2011, i.e., that he was "working at an extremely slow pace in the Central Kitchen Bakery, which was impeding bakery production." *Id.* SVSP-L-11-379 asserted that another inmate manipulated Defendant Scruggs into writing the chrono. *Id.* Plaintiff claimed the chrono was false and requested that Defendant Scruggs withdraw it. *Id.* SVSP-L-11-379 did not complain about the actions of anyone other than Defendant Scruggs. *Id.*

The record shows Plaintiff pursued SVSP-L-11-379 through the first level of review, where it was denied. *Id.* The prison does not have any record indicating that Plaintiff pursued SVSP-L-11-379 to the higher levels of review.

### 2) SVSP-L-11-669

On March 17, 2011, Plaintiff submitted SVSP-L-11-669 to the first level of review. Medina Decl. ¶ 19, Ex. E. SVSP-L-11-669 only concerned Defendant Scruggs and a February 4, 2011 chrono she issued to Plaintiff for theft of food. Medina Decl., Ex. E, Dkt. 70-5 at 2-8. Specifically, Plaintiff complained that Defendant Scruggs attended a meeting with Supervising Correctional Cook A. Fagan and Plaintiff, during which Defendant Scruggs allegedly stated as follows: "The 2-4-2011 CDCR 128-A Chrono Information is a[n] error on my part & I recant." Medina Decl., Ex. E, Dkt. 70-5 at 2. Plaintiff further claimed that Defendant Scruggs added: "I will write up a new chrono which will clear [Plaintiff]'s name regarding the 128-A." *Id.* at 4.

---

[6] The Court notes that the only copy of SVSP-L-11-379 in the record is missing the page containing the "extra space for [Plaintiff] to continue describing the issue that he was grieving and the relief he was requesting." Medina Decl. ¶ 18. However, there is a summary of the issue he was grieving and relief requested outlined in the first-level response to SVSP-L-11-379, *id.*, and Plaintiff does not dispute that the summary is a correct interpretation of this information from SVSP-L-11-379.

United States District Court
Northern District of California

1    However, Plaintiff complained that despite the aforementioned statements by Defendant Scruggs

2    at that meeting, she later refused to retract the previous chrono or prepare a new laudatory chrono

3    for Plaintiff (as a compensation).  *Id.*

4         Plaintiff pursued SVSP-L-11-669 through the first two levels of review.  It was partially

5    granted at the second level of review on May 9, 2011.  However, the "inquiry [was] not yet

6    complete."  *Id.* at 8.  The record shows that the second-level response indicates that a "confidential

7    inquiry was conducted," although the summary of the appeal inquiry was incomplete because it

8    seems to end mid-sentence.  *Id.*  Nevertheless, Plaintiff appealed it to the Director's level review

9    on June 7, 2011.  Medina Decl. ¶ 19, Ex. E; Mojica Decl. ¶ 10, Ex. D; Decl. Briggs ¶ 9, Ex. B;

10   Dkt. 16 ¶ 14.  On September 7, 2011, the third level reviewer informed Plaintiff that it had

11   returned the grievance to the SVSP appeal coordinators because aforementioned second-level

12   response was inadequate.  Medina Decl., Ex. E, Dkt. 70-5 at 9-11.  Directions from the third level

13   required the creation of an amended second-level response and that Plaintiff be provided the

14   opportunity to review the amended response and appeal the decision to the third level again should

15   he so choose.  *Id.*; Decl. Briggs ¶ 9, Ex. B.  On October 25, 2011, an amended second-level

16   response was completed.  Medina Decl. ¶ 20, Ex. E, Dkt. 70-5 at 12-13; Mojica Decl. ¶ 11.  The

17   reviewer explained that the appeal was partially granted to the extent that an "inquiry" was

18   conducted, and the "inquiry" was complete upon finding that "[s]taff did not violate CDCR

19   policy."  Medina Decl., Ex. E, Dkt. 70-5 at 12.  The amended second-level response explicitly

20   advised Plaintiff that to exhaust all remedies, he would need to submit the grievance to the third-

21   level review.  *Id.*  However, the record shows that Plaintiff did not pursue SVSP-L-11-669 to the

22   final level of review.

23                    **3)  SVSP-L-11-1435**

24        On June 16, 2011, Plaintiff submitted SVSP-L-11-1435 to the first level of review.

25   Medina Decl. ¶ 21, Ex. B.  Plaintiff pursued this grievance through all three levels of review and

26   completely exhausted available administrative remedies for it.  *Id.*  SVSP-L-11-1435 asserted that

27   Defendant Hedgpeth ordered Defendants Lawson, Scruggs, and Brunscher to "stop illegally

28   preventing [Plaintiff] from working in the bakery," and complained that Defendants Lawson,

United States District Court
Northern District of California

Scruggs, and Brunscher had continued to prevent Plaintiff from working despite the Defendant

Hedgpeth's order. *Id.*, Ex. 70-2 at 2. The grievance further asserted that his bakery supervisors,

Defendants Brunscher and Scruggs, filed false documents about Plaintiff causing him to lose his

job and that they did this in retaliation for grievances he filed against them. *Id.* at 4. Although this

grievance referenced Defendant Hedgpeth, it did not alert the prison to any problem with his

conduct. *Id.* To the contrary, as mentioned above, it asserted that Defendant Hedgpeth attempted

to help Plaintiff by ordering others to allow him to work. *Id.*

On June 24, 2011, SVSP-L-11-1435 was initially screened out at the first level of review

because it was not submitted on the "departmentally approved appeal forms" and did not include

the required attachments to support his grievance. *Id.* at 12. On July 22, 2011, Plaintiff re-

submitted SVSP-L-11-1435 on the correct form along with the required attachments. *Id.* at 2-11.

On August 23, 2011, SVSP-L-11-1435 was partially granted at the second level of review

in that an "inquiry into [his] allegation ha[d] been conducted." *Id.* at 13. The summary for appeal

inquiry stated:

> You were interviewed on August 17, 2011 by R. Rodriguez you
> stated you worked in the bakery for about 4 years and [you were] the
> senior baker with a pay rate of .32 per hour. You claim staff singled
> you out and were issuing unjustified 128s and 128B1s. You said the
> write ups were for Staff Manipulation, Over Familiarity and slowing
> down production. You added by not providing you with the 101s
> from the request date July 2010-March 2011, you were deprived of
> your Due Process. You admitted that you failed to follow a baking
> procedure by not placing a sheet pan on the top rack when baking
> the cakes causing metal shaving[s] to fall in the cakes. You felt that
> this write up was unjust because your supervisors were watching
> you and they should have corrected you at the time. There were no
> witnesses interviewed. The following information was reviewed as
> a result of your allegations of staff misconduct. On October 21,
> 2010, January 27, 2011 and February 3, 2011 you received 128-As
> for poor job performance. On February 22, 2011 you received a
> 128-B for attempting to manipulate staff then on April 26, 2011 you
> received a 128-B for program failure at which time you were placed
> on S time. This reviewer found no violation of CDCR policies by
> staff.

*Id.* at 13. Plaintiff then appeal SVSP-L-11-1435 to the Director's level, where it was initially

rejected on October 4, 2011 and January 27, 2012 for being incomplete and for having "excessive

attachments," respectively. *Id.* at 15-16.

8

1     On May 18, 2012, SVSP-L-11-1435 was denied at the Director's level and "no relief" was

2  provided at this final level of review. *Id.* at 17. The third-level reviewer "determined that

3  [Plaintiff's] allegations have been reviewed and evaluated by administrative staff and an inquiry

4  has been completed" at the second level of review. *Id.* The third-level response also indicated

5  that "[n]o changes or modifications are required by the Institution," and that "[t]his decision

6  exhausts the administrative remedies available to [Plaintiff] within CDCR." *Id.* at 18.

7       **B.    Legal Standard for Summary Judgment**

8     Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

9  on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The

10  court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

11  material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v.*

12  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of

13  establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

14  317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in

15  the record"). If the moving party meets this initial burden, the burden then shifts to the non-

16  moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*,

17  477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

18  (1986).

19     The failure to exhaust administrative remedies is an affirmative defense that must be raised

20  in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

21  banc). The defendants have the initial burden to prove "that there was an available administrative

22  remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172; *Williams v.*

23  *Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If the defendants carry that burden, "the burden

24  shifts to the prisoner to come forward with evidence showing that there is something in his

25  particular case that made the existing and generally available administrative remedies effectively

26  unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden of proof remains with

27  defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied,

28  and the district judge rather than a jury should determine the facts." *Id.* at 1166.

United States District Court
Northern District of California

9

1    A district court may only consider admissible evidence in ruling on a motion for summary

2   judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

3   In support of the motion for summary judgment, Defendants have presented declarations from the

4   following: Acting Chief of the Office of Appeals R. Briggs as well as Defendants Brunscher,

5   Lawson, Medina, Mojica, and Scruggs.  Dkts. 67-72.  Meanwhile, Plaintiff has filed his verified

6   SAC (Dkt. 16), his verified declaration (Dkt. 16 at 19-23), his verified opposition to Defendants'

7   motion (Dkt. 89), and his verified declarations in opposition to Defendants' supporting

8   declarations (Dkts. 91-94).  The Court will construe these filings as affidavits under Federal Rule

9   of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts

10   admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir.

11   1995).

### C.    Analysis of Motion for Summary Judgment Relating to Unexhausted Claims

#### 1.   Defendants' Initial Burden of Proving Unexhaustion

14    As explained in above, Defendants acknowledge that Plaintiff filed one relevant grievance

15   to the retaliation claim against Defendants Brunscher, Scruggs and Lawson, but contend that

16   Plaintiff did not exhaust his administrative remedies as to all other claims in the SAC.  Dkt. 56 at

17   29.  The undisputed evidence shows that SVSP-L-11-1435 involved the aforementioned retaliation

18   claim and that Plaintiff pursued this grievance to the highest level of appeal.  The undisputed

19   evidence also reveals that Plaintiff filed two other grievances, also dealing with the retaliation

20   claim (but mostly against Defendant Scuggs); however, SVSP-L-11-379 and SVSP-L-11-669

21   were not pursued to the highest level of appeal.  Therefore, Defendants argue that they are entitled

22   to summary judgment based on Plaintiff's failure to exhaust his administrative remedies as to all

23   claims except for the aforementioned retaliation claim.  *Id.*

24    Defendants have met their initial burden as the moving party by setting forth evidence to

25   demonstrate Plaintiff's non-exhaustion as to all claims except for the aforementioned retaliation

26   claim, specifically by conducting a search of the CDCR's records and finding no grievances

27   submitted to the Director's level by Plaintiff concerning the claims at issue.  *See Paramo*, 775

28   F.3d at 1191.  Defendants cite the declarations of Acting Chief Briggs of the Office of Appeals

United States District Court
Northern District of California

10

United States District Court
Northern District of California

and Appeals Coordinator Medina who have reviewed Plaintiff's grievances and concluded that: (1) Plaintiff only submitted two grievances during the 2011-2012 time period at issue that were pursued to the Director's level, only one of which related to the aforementioned retaliation claim; and (2) he did not submit any grievances concerning his deliberate indifference claim, court access claim, conspiracy claim, and Eighth Amendment claim for mental torture against Defendants that were accepted at any level of review.  Briggs Decl. ¶ 8; Medina Decl. ¶¶ 17-24.  Specifically, Appeals Coordinator Medina, who is responsible for "receiving, logging, routing, and monitoring the disposition of inmate grievances" at SVSP, attests that a search of the database containing records of all inmate appeals filed by Plaintiff at SVSP was conducted and that the search produced a grievance activity report showing proof that Plaintiff submitted a total of eight inmate appeals during the 2011-2012 time period.  Medina Decl. ¶ 14.  Appeals Coordinator Medina reviewed the grievance activity report and reviewed the grievances Plaintiff submitted from 2011 through 2012 states as follows relating to eight inmate appeals that were accepted for review:

> I am informed by the Attorney General's Office that Dillingham's lawsuit concern work related incidents that occurred in 2011 and 2012 between Dillingham and his bakery supervisors.  Based on my review of the IATS printout and my review of the grievances Dillingham submitted in 2011 and 2012, I have confirmed that Dillingham submitted only three grievances concerning those alleged events, and he pursued one of them through the final level of review.

*Id.* ¶ 17.  The three relevant grievances, which have been described in detail above as only pertaining to the aforementioned retaliation claim, are: SVSP-L-11-379, SVSP-L-11-669, and SVSP-11-01435.  *Id.* ¶¶ 18-21.

In sum, Defendants have adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust as to all claims in his SAC, except for the aforementioned retaliation claim.

### 2.  Plaintiff's Burden of Proving Unavailability of Administrative Remedies

As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1166.  Improper screening of a

United States District Court
Northern District of California

1    prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623

2    F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a

3    grievance or grievances that, if pursued through all levels of administrative appeals, would have

4    sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials

5    screened his grievance or grievances for reasons inconsistent with or unsupported by applicable

6    regulations." *Id.* at 823-24.

7          As explained above, Defendants have presented evidence that Plaintiff's prison records

8    prove that he did not submit grievances through CDCR's administrative grievance process

9    concerning the claims in his SAC, other than the aforementioned retaliation claim. In response,

10    Plaintiff has filed a verified opposition to Defendants' motion, Plaintiff has filed a verified

11    opposition as well as various verified declaration in opposition to Defendants' declarations, which

12    are excessively lengthy (with multiple attachments) and difficult to decipher, but they seem to

13    indicate that he concedes that the three aforementioned grievances are the ones relevant to the

14    present case. Dkts. 91 at 5-6, 13-15; 93 at 3. The Court notes that in his verified SAC, Plaintiff

15    claims that he filed one other grievance against Defendants Brunscher and Scruggs on March 27,

16    2011, which is a different filing date than the three aforementioned grievances. Dkt. 16 at 12,

17    ¶ 24. Attached to the SAC is Plaintiff's March 27, 2011 grievance on the original appeal form, in

18    which he complains that Defendants Brunscher and Scruggs filed "false[,] erroneous[,]

19    prejudicial" chronos and RVRs in retaliation for his filing grievances against them. *Id.* at 71-74.

20    However, there are no markings on that form indicating that this grievance was received or

21    processed through the highest level of appeal. *See id.* Plaintiff claims that he submitted this

22    grievance for review; however, Defendant Mojica (an appeals coordinator) "ma[d]e unavailable

23    administrative redress of this grievance with [Defendant] Mojica's staff . . . ." *Id.* ¶ 24. He adds

24    that the unanswered grievance was not returned to him. *Id.* Thus, Plaintiff claims that he was

25    "unable to complete final exhaustion" of this grievance. *Id.* Even though it seems that Plaintiff's

26    March 27, 2011 was unanswered, the Court finds that the previously-mentioned three grievances,

27    which *were* accepted for review—i.e., SVSP-L-11-1435 was exhausted through the *Director's*

28    level—are sufficient evidence showing that Plaintiff has exhausted administrative remedies as to

his retaliation claim against Defendants Brunscher, Scruggs and Lawson.  Accordingly, Defendants have not met their ultimate burden to show that Plaintiff did not exhaust his available administrative remedies as to the aforementioned retaliation claim.

However, as to the other claims in his SAC, it seems that Plaintiff generally argues that the administrative remedies were made "unavailable" to him; however, his arguments in support of such a claim are not clearly outlined in his opposition.  Instead, they are separately argued in a conclusory fashion in his declarations in opposition to Defendants' declarations.  *See generally* Dkts. 91, 93.  Although Plaintiff is not required to allege that he resorted to extraordinary measures in order to exhaust his administrative remedies, conclusory allegations that the administrative remedies process is inadequate are insufficient to defeat dismissal for failure to exhaust.  *See White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Furthermore, the record contradicts Plaintiff's arguments because, as mentioned above, it shows that Plaintiff was able to pursue *two grievances* to the Director's level at the time period during which his administrative remedies were allegedly not made available to him—SVSP-12-02488 and SVSP-11-01435.  Briggs Decl. ¶ 8, Ex. A; Medina Decl. ¶ 15, Exs. A-C.  Plaintiff does not support his allegation that the administrative remedies were made unavailable to him; therefore, they are conclusory at best.  Further, the Court is not required to scour the record to determine which particular argument and/or exhibit pertains to Plaintiff's conclusory claim that his administrative remedies were made unavailable to him.  Thus, the aforementioned conclusory evidence presented by Plaintiff is insufficient to defeat Defendants' motion for summary judgment as to the other claims in his SAC.  Furthermore, the fact that Plaintiff was able to file eight inmate appeals between 2011 and 2012 and pursue two grievances to the Director's level suggests that he had adequate access to the administrative appeals process.  *See* Medina Decl. ¶ 14; Briggs Decl. ¶ 8.  Meanwhile, the evidence produced by Defendants *is sufficient* to carry their ultimate burden of proof to show that the other claims are unexhausted, even in light of Plaintiff's verified factual allegations.

Accordingly, Defendants are entitled to summary judgment based on the failure to exhaust administrative remedies, and their motion is GRANTED as to most of the claims in his SAC, i.e.,

1   all claims except for the aforementioned retaliation claim (which will be addressed below).[7]

2          **D.      Analysis of Motion for Summary Judgment Relating to Retaliation Claim**

3          The only remaining claim is Plaintiff's claim that Defendants Brunscher, Scruggs, and

4   Lawson retaliated against him by drafting chronos and RVRs documenting his bad behavior in the

5   bakery.  Plaintiff contends the aforementioned Defendants were retaliating against him for filing

6   grievances against them.  Defendants argue that Plaintiff's retaliation claim against each of these

7   Defendants fails as a matter of law, and Defendants Brunscher, Scruggs, and Lawson are therefore

8   entitled to judgment in their favor.  Dkt. 65 at 30-34.

9              **1.   Facts Relating to Retaliation Claim**

10                 **a.   Plaintiff's Version**

11          Plaintiff worked at the SVSP bakery for several years and was supervised by Defendants

12  Brunscher and Scruggs, who are both women and not correctional officers.  Brunscher Decl. ¶¶ 2,

13  12; Scruggs ¶¶ 2, 13.

14          As mentioned above, in February and March 2011, Plaintiff filed grievances—SVSP-L-11-

15  379 and SVSP-L-11-669—against Defendant Scruggs.  Dkt. 16. at 7, 9-10, ¶¶ 1, 6, 12; Medina

16  Decl. ¶ 17, Exs. D, E.  Plaintiff alleges that Defendant Scruggs retaliated against him by engaging

17  in a "campaign of severe abuse of authority, work place reprisal, harassment[, and] life threatening

18  misconduct . . . individually and collusively with Defendant Brunscher."  Dkt. 16 at 9, ¶ 6.

19          According to Plaintiff, Defendant Scruggs issued chronos to Plaintiff based on false

20  accusations.  *Id.* at 9, ¶ 11.  Plaintiff claims that Defendant Brunscher colluded in this conduct

21  because she wanted to get Plaintiff to quit or be fired from his bakery job.  *Id.* at 10-11, ¶¶ 18-21.

22  On February 7, 2011, Plaintiff claims that Defendant Brunscher told another bakery employee,

23  Antonio James, that Plaintiff was "going around telling on us," meaning prison staff, which was

24  "an indirect way of labeling plaintiff a snitch, informer, cop, troublemaker."  *Id.* at 10, ¶ 20, Ex. 8.

25

26          ————————————
            [7] The Court's finding that Defendants are entitled to summary judgment (based on the
27  failure to exhaust administrative remedies) as to all claims in Plaintiff's SAC except for the
    retaliation claim obviates the need to address Defendants' alternative arguments to dismiss the
28  SAC for failure to state a claim.  Therefore, their motion for judgment on the pleadings is
    DENIED as moot.

United States District Court
Northern District of California

On February 8, 2011, Defendant Scruggs allegedly told James that Plaintiff was "working for the CIA," and James concluded that this was the same as calling Plaintiff a "rat."  *Id.* at 12, ¶ 22, Ex. 9.  These rumors allegedly caused Plaintiff's co-workers to shun him and want to harm him.  *Id.* at 12, ¶ 23.  As explained above, Plaintiff also claims that he filed another grievance against Defendants Brunscher and Scruggs on March 27, 2011.[8]  *Id.* at 12, ¶ 24.

On May 19, 2011, Defendants Brunscher and Scruggs, together with Defendant Lawson (a correctional officer), allegedly gave Plaintiff employment-related forms for his new position consisting of a contract and a work expectations document, and requested that he sign them.  *Id.* at 13, ¶ 26.  The forms showed that Plaintiff was receiving a reduction in pay.  *Id.*, Ex. 12.  Plaintiff refused to sign the forms.  *Id.*   Defendants Lawson, Brunscher and Scruggs allegedly "threaten[ed] to file" a rule violation report (RVR) alleging that Plaintiff refused to work as ordered if he did not sign the forms.  *Id.* at 13, ¶ 26.  When Plaintiff refused to sign the forms, he claims Defendant Lawson issued the RVR, accusing Plaintiff of refusing to perform work as ordered.  *Id.*   The RVR states:

> Dillingham was refusing to sign his "Job Expectations Forms" which is a requirement for all new workers or for ones who are changing job assignments, as was the case here.  I gave inmate Dillingham direct order to read & sign his Job Expectation Form and get to work, again, with no compliance.  Inmate Dillingham's job performance has been poor of late.  This is the reason for current job assignment change in the first place.  The documentation is critical (Job Expectation Form), without it, inmate Dillingham cannot be allowed to work in the Bakery.  This writer is requesting that Inmate Dillingham be taken to Unit Classification Committee immediately in order to be remove[d] from his current job location.

*Id.*, Ex. 12.  Plaintiff alleges that Defendants Lawson, Brunscher and Scruggs "filed the job termination false accusation in retaliation for filing grievances."  *Id.* at 15, ¶ 36.

During his RVR hearing, Plaintiff claims he reiterated that he told Defendants Lawson, Brunscher and Scruggs that he was ready to work but would not sign the forms.  *Id.*  Plaintiff was

---

[8] As mentioned above, there is nothing in the record indicating that Plaintiff's March 27, 2011 grievance was received or pursued to the higher levels of appeal.  In any event, the retaliation claim against Defendants Brunscher and Scruggs has *not* been dismissed for failure to exhaust administrative remedies.  Thus, it does not matter that Plaintiff's March 27, 2011 grievance was unanswered because the Court is handling the retaliation claim on the merits.

1   found guilty of the RVR by Defendant Sulliven. *Id.* at 13, ¶ 26, Ex. 12 at 1-2.

2          Again, as mentioned above, Plaintiff filed one final grievance pertaining to his retaliation

3   claim against Defendants Lawson, Brunscher and Scruggs—SVSP-11-01435, which he exhausted

4   through to the Director's level.  Medina Decl. ¶ 21, Ex. B.

5                              **b.  Defendants' Version**

6          In their roles as bakery supervisors, Defendants Brunscher and Scruggs did not have the

7   authority to hire or fire inmate employees.  Scruggs Decl. ¶ 3; Brunscher Decl. ¶ 3.  Likewise,

8   Defendant Lawson had no authority to hire or fire inmate employees.  Lawson Decl. ¶ 3.  Those

9   types of decisions are made by classification committees that determine appropriate programming

10  for each inmate.  Scruggs Decl. ¶ 3; Brunscher Decl. ¶ 3; Lawson Decl. ¶ 3.  Thus, a classification

11  committee, and not Defendants Brunscher, Scruggs, or Lawson, terminated Plaintiff from his

12  position in the bakery.  *Id.*

13         Defendants Brunscher and Scruggs were responsible, however, for documenting the

14  performance and conduct of inmate employees in the kitchen, and making recommendations

15  concerning their employment.  Scruggs Decl. ¶¶ 3-4, 10, 11-12, 27, Ex. H; Brunscher Decl. ¶¶ 3-4,

16  9-11, Ex. H.  Meanwhile, Defendant Lawson was responsible for disciplining inmates who

17  violated rules or who refused to appropriately perform their work duties.  Lawson Decl. ¶ 4.

18         Correctional officers and other prison staff members typically discipline inmates by

19  providing oral counseling or writing a short report or chrono about problematic conduct.  *Id.*

20  Correctional officers also document more egregious conduct in longer reports called RVRs.  *Id.*

21  The CDCR's official policies, as set forth in the Department Operations Manual, specifically

22  direct that these forms of documentation be used in disciplinary situations.  *Id.*  And the

23  Department Operations Manual also requires that an inmate's refusal to work be documented in

24  RVRs.  *Id.*

25         As mentioned above, Defendants Brunscher and Scruggs are women, and they were bakery

26  supervisors, not correctional officers.  Scruggs Decl. ¶ 8; Brunscher Decl. ¶ 8.  Correctional

27  officers were assigned to the central kitchen, but they circulated through different areas of the

28  kitchen throughout the day.  *Id.*  Consequently, for most of each day, there were no correctional

United States District Court
Northern District of California

16

1   officers monitoring the behavior of inmates in the bakery.  *Id.*  For this reason, if conflicts

2   developed between particular inmates and the supervisory staff in the bakery, Defendants

3   Brunscher and Scruggs sometimes had serious concerns about their safety.  *Id.*

4          During her years of working in the kitchen at SVSP, Defendant Scruggs learned about the

5   dangers of allowing conflicts between supervisors and inmates to go unaddressed.  Scruggs Decl.

6   ¶ 9.  Defendant Scruggs was "personally assaulted" on three different occasions by inmates in the

7   bakery and "sustained injuries from those assaults."  *Id.*

8          The work performed in the central kitchen bakery is important because it plays an

9   important part in feeding the thousands of inmates housed at SVSP.  Scruggs Decl. ¶¶ 5- 6;

10  Brunscher Decl. ¶¶ 5-6.  Baked goods, such as biscuits, cornbread, and cake, are prepared by

11  workers in the bakery, and are then distributed to satellite kitchens throughout the prison to be

12  included in the meals provided to inmates on a daily basis.  *Id.*  One of the bakery's primary goals

13  is to produce quality, safe food for the thousands of inmates housed at SVSP.  *Id.*

14         When inmates who work in the kitchen perform their work slowly or poorly, it can result

15  in food that is not prepared on time and food that is unsafe for consumption.  Scruggs Decl. ¶¶ 5-6,

16  11; Brunscher Decl. ¶¶ 5-6, 10; Lawson Decl. ¶ 5.  And when the important work of the kitchen is

17  not completed on time, it can disrupt programming and prison operations.  *Id.*  Additionally,

18  workplace conflicts between inmates and supervisors can potentially erupt into violence if they are

19  not appropriately addressed.  Scruggs Decl. ¶ 9.  Thus, Defendants Brunscher, Scruggs, and

20  Lawson claim that there are legitimate correctional reasons for documenting, and taking measures

21  to address, inmates who perform their kitchen jobs poorly, are insubordinate, break the rules, or

22  cause other problems or conflicts in the bakery work environment.  Scruggs Decl. ¶¶ 5-6, 11;

23  Decl. Brunscher ¶¶ 5-6, 10; Lawson Decl. ¶ 5.

24         In early 2011, Plaintiff's job performance in the bakery and his attitude toward his

25  supervisors and coworkers became problematic.  Scruggs Decl. ¶ 14; Brunscher Decl. ¶ 13;

26  Lawson Decl. ¶ 6.  In particular, Plaintiff's attitude and demeanor toward Defendants Brunscher

27  and Scruggs became negative, and at times Plaintiff became confrontational with them.  Scruggs

28  Decl. ¶¶ 14-23, Exs. A-G; Brunscher Decl. ¶¶ 13-24, Ex. A-H; Lawson Decl. ¶¶ 6-16, Exs. A-F.

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1  Additionally, Plaintiff began refusing to take directions and follow orders, his safety practices

2  became inadequate, and he was no longer a dependable employee.  *Id.*

3          Under the CDCR's hiring criteria, these problems with Plaintiff's conduct in the bakery

4  ultimately indicated that he was not suitable for employment there.  *Id.*  The hiring criteria requires

5  that inmates must demonstrate: (a) an ability to deal with authority figures and job supervisors;

6  (b) a willingness to take directions and orders; (c) dependability; and (d) that they can comply with

7  safety practices.  Scruggs Decl. ¶ 14; Brunscher Decl. ¶ 13.  In 2011, Plaintiff failed to satisfy

8  these requirements.  *Id.*  As Plaintiff's supervisor, Defendants Brunscher and Scruggs had to

9  document Plaintiff's problems with performance as part of their supervisorial duties.  Scruggs

10  Decl. ¶ 25; Brunscher Decl. ¶ 25.  Defendants Brunscher and Scruggs also became concerned for

11  their safety and that was an additional factor that motivated them to request the Plaintiff be

12  permanently removed from the bakery.  Scruggs Decl. ¶ 24; Brunscher Decl. ¶ 25.  Their concern

13  was documented in a March 15, 2011 RVR for Failure to Perform Work as Ordered.  Scruggs

14  Decl., Ex. C.  The RVR, which was reported by Defendant Scruggs, states:

15              On 3/15/11, at approximately 0900 hours, while I was assigned as
               Baker II in Central Kitchen's Bakery, Ms. Brunscher called Inmate
16             DILLINGHAM (C-95149, A2-134) out of the bakery to the outside
               ovens by Distribution.  A rack that Inmate DILLINGHAM had filled
17             was put in the oven with cakes in every rung.  Cakes will not back
               uniformly if they are put on every rung, as Inmate DILLINGHAM
18             has been trained.  Inmate DILLINGHAM did not put sheet pans on
               the top of the rack to catch the gear oil and metal shavings.  Inmate
19             DILLINGHAM knows that this will compromise the cakes, making
               them unfit for human consumption.   The product could not be
20             served.  Inmate DILLINGHAM also over-sealed items on the same
               rack, knowing they will not bake properly and the potential for
21             someone getting burned transferring the pans is huge.   Inmate
               DILLINGHAM will not give his supervisor the respect that CCR
22             § 3004(b) addresses in Rights and Respect of Others.   Inmate
               DILLINGHAM has been verbally counseled previously, as well as
23             received CDCR-128As and CDCR-128Bs . . . .

24  *Id.*  Plaintiff was found guilty by Defendant Sulliven of a lesser included offense of Failure to

25  Perform Word as Ordered, an administrative offense.  *Id.*

26          Defendants deny that they "tried to get [Plaintiff] fired from his bakery position in

27  retaliation for his submitting an inmate grievance against [them]."  Scruggs Decl. ¶ 25; Lawson

28  Decl. ¶ 17.  Instead, Defendant Brunscher prepared an April 26, 2011 chrono which documented

Plaintiff's "defiant and negative attitude, his attempts to manipulate his supervisors, his failure to follow proper food-preparation procedures, and his deliberate acts to contaminate bakery product." Brunscher Decl. ¶ 18.  She also explained in the chrono that Plaintiff's conduct in the bakery could potentially cause illness or injury to others if it were allowed to continue.  *Id.*  Because of Plaintiff's behavior in the bakery, Defendant Brunscher requested that the classification committee consider removing Plaintiff from his baker position.  *Id.*  Effective May 19, 2011, the classification committee directed that Plaintiff's job position in the bakery be changed to a new lower-paying position.  *Id.* ¶ 19.  On that date, Defendant Brunscher was informed about Plaintiff's change in job position, and instructed Plaintiff to review and sign the usual packet of documents that inmates must sign when they change positions.  *Id.* ¶ 21.

As explained above, Plaintiff refused to sign the documents, and Defendant Brunscher drafted another chrono documenting that Plaintiff refused to comply with her instruction that he review and sign the required packet of documents for his new position.  *Id.* ¶ 22.  Defendant Brunscher also deemed Plaintiff's refusal to follow her directions to sign the required documents as a refusal to work, which she documented in the chrono.  *Id.*

Also as indicated above, the May 19, 2011 incident resulted in Plaintiff being charged and convicted of an RVR refusal to comply with his supervisor's direct orders.  *Id.* ¶ 23.

As a result of the incident on May 19, 2011, and Plaintiff's other job performance issues, Defendants Brunscher and Scruggs submitted a June 1, 2011 memorandum requesting that Plaintiff be permanently removed from the bakery.  *Id.* ¶ 24.  The memorandum states:

> In regards to Inmate Dillingham, CDCR # C-95149, I, J. Brunscher[,] and E. Scruggs, Baker II's are requesting Inmate Dillingham be removed from his job position, MKB-A-106 in Central Kitchen due to an excess amount of 115's and 128's he has recently received.  The first 115 he received was due to him knowingly compromising our product and manipulation of staff on 3-15-11.  Once this 115 was heard it was dropped to a 128.  He was given a reduction in pay and was allowed to return to work on 5/17/11.  This ended in Dillingham being issued another 128 and 115 for refusing to sign his new job description and Central Kitchens Standards of Participation and Performance.  We are recommending Dillingham be removed from his job position MKB-A-106 based on the excess amount of 128's and 115's received and also creating a distraction in Central Kitchen Bakery by his poor job performance.

1   *Id.*, Ex. H.  In sum, Defendants claim the actions they took concerning Plaintiff's removal from

2   the bakery were in response to: (a) his poor job performance and his disruption of work in the

3   bakery; (b) concerns that Plaintiff's poor performance would result in unsafe food products that

4   could harm inmates; (c) Plaintiff's insubordination and refusal to follow directions; (d) Plaintiff's

5   defiant demeanor and bad attitude; and (e) concerns about Defendants Bruncher's and Scruggs's

6   safety.  *See* Scruggs Decl. ¶ 25; Brunscher Decl. ¶¶ 24-25; Lawson Decl. ¶ 17.

            **2.  Legal Framework**

7

8           "Within the prison context, a viable claim of First Amendment retaliation entails five basic

9   elements:  (1) An assertion that a state actor took some adverse action against an inmate

10  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

12  correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

13          The prisoner must show that the type of activity he was engaged in was constitutionally

14  protected, that the protected conduct was a substantial or motivating factor for the alleged

15  retaliatory action, and that the retaliatory action advanced no legitimate penological interest.

16  *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from

17  circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly-

18  retaliatory act and other circumstantial evidence, as well as direct evidence.  *Bruce v. Ylst*, 351

19  F.3d 1283, 1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted out of

20  retaliation is not sufficient.  *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases)

21  (affirming grant of summary judgment where there was no evidence that defendants knew about

22  plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior

23  lawsuit).

24          To raise a triable issue as to motive, a plaintiff must offer evidence that the defendants

25  knew about the protected speech.  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).  In

26  addition, a plaintiff must show "either direct evidence of retaliatory motive or at least one of three

27  general types of circumstantial evidence [of that motive]."  *McCollum v. California Dept. of*

28  *Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283

United States District Court
Northern District of California

F.3d 1070, 1077 (9th Cir. 2002)).  To survive summary judgment without direct evidence, therefore, a plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum*, 647 F.3d at 882 (internal quotation marks and citation omitted).

### 3.  Elements of Retaliation Claim

Plaintiff claims that his First Amendment rights were violated when Defendants Brunscher, Scruggs, and Lawson drafted chronos and RVRs documenting his bad behavior in the bakery, and that they did so with retaliation motives.  Defendants Brunscher, Scruggs, and Lawson argue they are entitled to summary judgment on Plaintiff's claim of retaliation because (a) there is an absence of evidence as to a retaliatory motive and (b) Plaintiff has failed to prove that there was no legitimate penological reason for these Defendants' actions.  Dkt. 65 at 32-34.

### a.  Second and Third Elements

In determining whether a retaliatory motive exists, a relevant factor includes whether the defendant was aware of the prisoner's protected conduct.  *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  Here, Plaintiff does not proffer facts to show that Defendants Brunscher, Scruggs, and Lawson knew about his protected conduct or that the protected conduct (i.e., Plaintiff filing grievances against them) motivated these Defendants to retaliate.

First, the timeline of events does not indicate that Defendants Brunscher, Scruggs, and Lawson could have known about Plaintiff's grievances prior to their actions of documenting his bad behavior.  The record shows Defendant Scruggs documented Plaintiff's poor behavior and work performance in a chrono she drafted on February 4, 2011, relating to an incident on January 27, 2011.  Scruggs Decl. ¶ 16, Ex. A.  Plaintiff submitted his first grievance—SVSP-L-11-379—complaining about Defendant Scruggs on February 9, 2011, which was five days *after* Defendant Scruggs drafted the chrono.  Medina Decl. ¶ 18, Ex. D.  Although Defendant Scruggs continued to document Plaintiff's poor conduct after Plaintiff filed his first grievance, this initial sequence of events demonstrates that Plaintiff's filing of SVSP-L-11-379 did not motivate her to document

1    Plaintiff's problematic behavior, because she began documenting it *before* Plaintiff submitted

2    SVSP-L-11-379.

3           Similarly, Defendant Brunscher documented problems with Plaintiff in April and May

4    2011.  Brunscher Decl. ¶¶ 18, 22, 24, Exs. D, F, H.  However, Plaintiff's grievance that included a

5    complaint about Defendant Brunscher—SVSP-L-11-1435—was not filed until June 16, 2011.

6    Medina Decl. ¶¶ 17-19, 21, Ex. B, D, E.  As explained above, Plaintiff's two other grievances

7    during the relevant period concerning his work in the bakery—SVSP-L-11-379 and SVSP-L-11-

8    669—were directed at Defendant *Scruggs*, and not Defendant Brunscher.  *Id.*, Ex. D, E.

9           Likewise, Defendant Lawson documented problems with Plaintiff and initiated

10   disciplinary proceedings on March 15, 2011 and May 23, 2011.  Lawson Decl. ¶¶ 8, 15, Exs. B, F.

11   However, Plaintiff first complained about Defendant Lawson in the June 16, 2011 grievance—

12   SVSP-L-11-1435—and not in his previous two grievances that only concerned Defendant

13   Scruggs.  Medina Decl. ¶¶ 17-19, 21, Ex. B, D, E.

14          Therefore, the record shows that Defendants Brunscher, Scruggs, and Lawson could not

15   have been aware that Plaintiff had filed grievances against them because no such grievances were

16   filed when they initially drafted chronos and RVRs documenting his bad behavior in the bakery,

17   thus indicating a lack of retaliatory motive.  Arguably, Plaintiff could point out that Defendants

18   Brunscher, Scruggs, and Lawson continued to document his bad behavior in March and May 2011

19   *after* he had filed his first two grievances—SVSP-L-11-379 and SVSP-L-11-669—in February

20   and March 2011, albeit only naming Defendant Scruggs.  Even assuming that Defendants

21   Brunscher, Scruggs, and Lawson knew about Plaintiff's protected activities, although retaliatory

22   motive may be shown by the timing of the allegedly retaliatory act and inconsistency with

23   previous actions, as well as direct evidence, *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003),

24   it is not established simply by showing adverse activity by the defendant after protected speech;

25   rather, the plaintiff must show a nexus between the two, *Huskey v. City of San Jose*, 204 F.3d 893,

26   899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter*

27   *hoc*, i.e., "after this, therefore because of this").  Here, Plaintiff has not met his burden of showing

28   that retaliation was the "substantial" or "motivating" factor behind the actions of Defendants

Brunscher, Scruggs, and Lawson (i.e., documenting Plaintiff's bad behavior). Plaintiff's bare

factual assertions that these Defendants' documenting his bad behavior was motivated by such a

reason is no more than *post hoc, ergo propter hoc*. In other words, Plaintiff seems to assert that

because he had filed those two initial grievances, the documenting of his bad behavior must have

been retaliatory based upon suspect timing. Yet, Plaintiff has put forth no non-speculative

evidence showing a triable issue of fact of a causal nexus. For example, he offers no evidence of

having personal knowledge, as opposed to offering speculation, of such a motive. Further, there is

no evidence that any of these Defendants expressed opposition to Plaintiff's First Amendment

activities. Nor is there evidence tending to show that these Defendants' reasons for documenting

his bad behavior were false or pretextual. In fact, Plaintiff admits that there were reasons for these

Defendants to believe he was behaving badly in the bakery. For example, in his initial grievance

against Defendant Scruggs (SVSP-L-11-379), Plaintiff claimed that she was being manipulated by

other inmates into writing the chrono. Medina Decl., Ex. D. Moreover, Plaintiff has attached a

verified declaration to his SAC, in which he described how other inmate workers tricked his

supervisors into believing that Plaintiff was causing problems in the bakery. Dkt. 16 at 19-23.

Thus, Plaintiff seems to put forth some evidence that these Defendants' adverse actions could have

been motivated by the belief that he was causing problems in the bakery.

In sum, the timing of Plaintiff's filing of the grievances against Defendants Brunscher,

Scruggs, and Lawson, and his own admissions about what motivated their conduct demonstrates

that they were not taking adverse action against him in retaliation for his filing grievances.

Plaintiff, therefore, cannot satisfy the second and third elements of his retaliation claim against

them, i.e., that these Defendants took some adverse action against him because of his protected

conduct. *See Rhodes*, 408 F.3d at 567-68.

### b. Fifth Element

In addition, for his retaliation claim to survive, Plaintiff must also prove the fifth element,

i.e., that there was no legitimate penological reason supporting Defendants Brunscher, Scruggs,

and Lawson's efforts to document and discipline Plaintiff for his bad behavior. *See Rhodes*, 408

F.3d at 567-68. The Court finds that Plaintiff cannot satisfy that element of his retaliation claim.

United States District Court
Northern District of California

The record shows that Defendants Brunscher, Scruggs, and Lawson had a duty to document poor workplace conduct and take disciplinary action against Plaintiff when he was insubordinate and broke the rules.  Scruggs Decl. ¶¶ 4-12, 25; Brunscher Decl. ¶¶ 4-11, 25; Lawson Decl. ¶¶ 4-5, 17.  By performing those duties, these Defendants maintained order and discipline, ensured the production of safe and healthy food for inmates, avoided the disruption of programming and prison operations, and maintained safety in SVPS's central kitchen, which are all important correctional goals.  *Id.*  Because their conduct advanced legitimate correctional goals, Plaintiff fails to satisfy the final element and cannot prevail on his retaliation claim against them.  *See Rhodes*, 408 F.3d at 567-68.

Accordingly, Defendants Brunscher, Scruggs, and Lawson are entitled to summary judgment on Plaintiff's retaliation claim against them.[9]

### E.    Analysis of Claims Against Unserved Defendant Cats/Cate

Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues.  *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995).

As mentioned above, Defendant Cats/Cate has not been served and has not joined the other Defendants in their motion for summary judgment.  It is apparent, however, that the claim of conspiracy and a related claim of failing to prevent the conspiracy against unserved Defendant Cats/Cate are subject to dismissal for failure to exhaust administrative remedies.  The allegations against unserved Defendant Cats/Cate in Plaintiff's SAC are the same as those against the served Defendants Mojica, Medina, and Hedgpeth.  As explained above, the Court has determined that the claim of conspiracy and a related claim of failing to prevent the conspiracy against served Defendants Mojica, Medina, and Hedgpeth are unexhausted.  Therefore, the Court has granted Defendants' motion for summary judgment on the ground of failure to exhaust administrative

---

[9] The Court's finding that Defendants Brunscher, Scruggs, and Lawson are entitled to summary judgment as a matter of law on Plaintiff's First Amendment retaliation claim obviates the need to address these Defendants' alternative arguments regarding their entitlement to qualified immunity or that this claim should be dismissed for failure to state a claim.

24

remedies as to the aforementioned claims.  There is no suggestion in the SAC, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present motion for summary judgment, that the analysis differs with respect to unserved Defendant Cats/Cate as opposed to the aforementioned served Defendants.  *See Columbia Steel Fabricators, Inc.*, 44 F.3d at 803 (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).  Accordingly, Defendant Cats/Cate is entitled to summary judgment as a matter of law based on failure to exhaust administrative remedies.[10]

## III.   CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.   The Court GRANTS Defendants' motion for summary judgment based on the failure to exhaust administrative remedies as to most of the claims in the SAC (i.e., all claims except for the retaliation claim against Defendants Brunscher, Scruggs, and Lawson) against the served Defendants, and also as to the claims against unserved Defendant Cats/Cate. Dkt. 65.  The aforementioned claims are DISMISSED without prejudice to refiling after exhausting California's prison administrative process.  *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

2.   The Court GRANTS Defendants' motion for summary judgment as to Plaintiff's remaining retaliation claim against Defendants Brunscher, Scruggs, and Lawson.

3.   Defendants' alternative motion for judgment in the pleadings is DENIED as moot.

4.   The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

5.   This Order terminates Docket No. 65.

IT IS SO ORDERED.

Dated: September 8, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[10] Because the Court has resolved all claims against Defendant Cate/Cats, this Defendant need not be served.  Therefore, the Court DENIES as moot any pending request made by Plaintiff to compel Defendants to provide a current address for Defendant Cate/Cats. Dkt. 88.

United States District Court
Northern District of California